[Civ. No. 8778.   Third Dist.   Mar: 28, 1955.]

SHERLIE BENNETT, Petitioner, v. SUPERIOR COURT OF PLACER COUNTY, Respondent.

Srednik & Gibson for Petitioner.

Edmund G. Brown, Attorney General, and Doris H. Maier, Deputy Attorney General, for Respondent.

PEEK, J.—Petitioner seeks a writ of mandate compelling the respondent superior court to consider her application for probation on its merits, said court having refused to do so on the ground that petitioner is ineligible for probation under the provisions of section 1203 of the Penal Code.

By an information filed by the district attorney of Placer County, petitioner was charged with a violation of section 424, subdivision 3, of the Penal Code, in that she "did willfully, unlawfully, feloniously and knowingly keep false accounts relating to the receipt, safekeeping, transfer and disbursement of public money, and she, the said Sherlie Bennett, was then and there the Clerk of the Roseville Judicial District Court, County of Placer, State of California." To the crime charged she entered her plea of guilty and made a formal motion for probation. The probation officer's report recommended probation subject to certain stated conditions "providing the defendant is eligible for release upon probation." At the hearing on her application the court stated that were it not for the provisions of section 1203 of the Penal Code, it would "entertain her motion for probation and accept the recommendation of the Probation Officer."

The pertinent portions of Penal Code, section 1203, provide in part,

"[P]robation shall not be granted . . . to any public official or peace officer of the State, county, city, city and county, or other political subdivision who, in the discharge of the duties of his public office or employment, accepted or gave or offered to accept or give any bribe or embezzled public money or was guilty of extortion . . ."

Petitioner makes two main contentions: (1) That she is not a public official within the meaning of said section, but merely an employee; (2) that she was not convicted of the

crime of embezzlement, and hence did not come within the ineligibility provisions of said section.

Some states have endeavored by statute to define public office. Here however, the statute neither defines the words "public official" nor does it specify the positions which are deemed to be public offices. Apropos of the question posed, the court in *Patton* v. *Board of Health,* 127 Cal. 388, 397 [59 P. 702, 78 Am.St.Rep. 66], after discussing numerous cases observed that "the definitions of the term 'office,' while not inaccurate, when taken in a general sense, are quite inadequate when applied to particular cases." And that the disagreement is not so much as to definitions as it is in their application to the circumstances of particular cases.

In the case of *People ex rel. Chapman* v. *Rapsey,* 16 Cal.2d 636 [107 P.2d 388], the court had before it for consideration a question as to the right of defendant to hold the office of city attorney and city judge in a city of the sixth class. In discussing the definition of the term "public office" the court quoted approvingly from the earlier case of *Patton* v. *Board of Health, supra,* wherein it was said,

"It seems to be reasonably well settled that where the legislature creates the position, prescribes the duties, and fixes the compensation, and these duties pertain to the public and are continuing and permanent, not occasional or temporary, such position or employment is an office and he who occupies it is an officer. In such a case, there is an unmistakable declaration by the legislature that some portion, great or small, of the sovereign functions of government are to be exercised for the benefit of the public, and the legislature has decided for itself that the employment is of sufficient dignity and importance to be deemed an office." (P. 398.)

In the later case of *Leymel* v. *Johnson,* 105 Cal.App. 694 [288 P. 858], the court quoted with approval from volume 21, California Jurisprudence, pages 819 and 820, (the same was also approved in *Chapman* v. *Rapsey*) that—

" 'The words "public office" are used in so many senses that the courts have affirmed that it is hardly possible to undertake a precise definition which will adequately and effectively cover every situation. Definitions and application of this phrase depend, not upon how the particular office in question may be designated nor upon what a statute may name it, but upon the power granted and wielded, the duties and functions performed, and other circumstances which manifest the nature of the position and mark its character,

irrespective of any formal designation. But so far as definition has been attempted, a public office is said to be the right, authority, and duty, created and conferred by law—the tenure of which is not transient, occasional, or incidental—by which for a given period an individual is invested with power to perform a public function for public benefit.' "

. . . . . . . . . . . . . .

" 'Of the various characteristics attached to public office by definition, some are regarded as indispensable, and others, while not in themselves conclusive, are yet said to indicate more or less strongly the legislative intent to create or not to create an office. One of the prime requisites is that the office be created by the Constitution or authorized by some statute. And it is essential that the incumbent be clothed with a part of the sovereignty of the state to be exercised in the interest of the public.' " (P. 697.)

The California Constitution provides, under article VI, section 11, that justice courts are made a part of the judicial system of the State, and the Legislature is authorized to prescribe the manner in which the number, qualification and compensation of the judges, officers and attaches of justice courts shall be fixed. Pursuant to this provision, the Legislature, by section 71040 of the Government Code, has authorized the board of supervisors to divide respective counties into judicial districts, and, by section 71600 of the same code, has authorized such board to regulate the compensation of judges and constables of such courts and "prescribe the number, qualifications, and compensation of such clerks, deputies, and other attaches of justice courts . . ." By the provisions of section 103a of the Code of Civil Procedure—

"Clerks of justice courts, in addition to the other powers conferred upon them by law, shall have power to administer and certify oaths to affidavits, and all papers, documents or instruments used in or in connection with, the civil actions or proceedings in such justice courts and to issue summons and other writs and notices in civil actions in said courts in the name of the judge before whom the same is pending or out of whose court the same is issued."

Further provisions relative to the disposition of fines, forfeitures and deposits by such clerks are found in section 1463 of the Penal Code, and the Government Code, section 71000 et seq., contains numerous other provisions relative to the status of officers of justice and municipal courts.

Applying the rules enunciated in the above-cited cases

to the constitutional and statutory provisions previously noted, it would seem to follow that petitioner, as clerk of the Roseville Judicial District Court, occupied a public office under the laws of this state.

Petitioner next contends that she does not come within the quoted provisions of section 1203 for the further reason that the crime with which she was charged, and to which she pleaded guilty, involved the falsification of public records (Pen. Code, § 424, subd. 3); hence she is not one who has "embezzled public money" within the meaning of the code.

As originally enacted in 1872, section 1203 contained no restrictions on the power of the courts to grant probation. From time to time during the intervening years restrictions have been placed upon courts with regard to persons eligible for probation. Such restrictive amendments material here appear to be in accordance with the general policy of the Legislature which the Supreme Court, in *People* v. *Dillon*, 199 Cal. 1 [248 P. 230], noted at page 12 with this comment:

"The safekeeping of public moneys has, from the first, been safeguarded and hedged in by legislation most strict and severe in its exactitudes."

At the present time section 1203 in effect contains eight separate groupings, all of which relate to particular facts or circumstances which would preclude a defendant who comes within one such group from obtaining probation, and in each instance, except the one relating to public officials, when mention is made of a specific act which would be a bar to probation, the word "conviction" is used. Therefore petitioner argues that the phrase in question, "embezzled public money" must mean either *convicted* of embezzling public money, or at least "guilty" of that crime since that is the word used in relation to the final restriction as to the crime extortion.

It is not the province of this court to question the wisdom or policy behind the enactment of the particular provisions of that section. As noted in *People* v. *Hess*, 104 Cal.App.2d 642 [234 P.2d 65], the right to enact laws making certain actions criminal and to designate the punishment for such crimes is vested exclusively in the Legislature. "Clothed with the power to prescribe penalties for violations of criminal statutes, it necessarily follows that the legislative branch of the government has the power to declare that in certain of these cases, probation may not be granted." (P. 685.)

Pursuant to that authority, the Legislature has provided the procedure to be followed by the courts on application for probation, such as reference to the probation officer who must make an investigation and report to the court at a specified time concerning the circumstances surrounding the crime and concerning the defendant and his prior record and history. At the date so fixed, the court must hear and determine such application.

As noted in the case of *People* v. *Leach*, 22 Cal.App.2d 525 [71 P.2d 594], such provisions, of necessity, involve bringing before the court matters not formally pleaded. Thus in the present case, although defendant was charged with the specific crime of falsification of public records, if it appeared in fact that she had also embezzled public funds, she was thereby precluded from obtaining probation. Here the record shows that at the hearing on her application for probation she was personally in attendance and represented by counsel. The court had before it the facts as stated in the probation officer's report—that she had admittedly, in the discharge of her duties as a clerk of the court, "taken various amounts of money from the Court funds from time to time for her own personal use" and that she had "admittedly misappropriated from official Court funds for her own personal use" a substantial amount. These facts were noted by the trial court in its order denying probation. They were not challenged in any way by petitioner, but were apparently accepted by her as a true statement of her conduct.

The writ is denied.

Van Dyke, P. J., and Schottky, J., concurred.