[Civ. No. 13825. Third Dist. Jan. 4, 1974.]

GEORGE R. KIRK, Plaintiff and Appellant, v. HOUSTON I. FLOURNOY, as State Controller, Defendant and Respondent.

554

**Counsel**

Horton, Knox, Carter & Foote, Ewing & Kirk and Russell J. Kirk for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, Elizabeth Palmer, Assistant Attorney General, N. Eugene Hill, and James D. Claytor, Deputy Attorneys General, for Defendant and Respondent.

**Opinion**

**GOOD, J.**\*—In 1971, plaintiff, who was a superior court judge in Imperial County since 1963, sought to retire at the age of 70 with optimum retirement benefits under Government Code section 75076. He claimed 20 years of service credit: eight on the bench, seven (plus) as City Attorney of Calexico, and the balance from over five years as assistant legal counsel for the Imperial Irrigation District. On July 20, 1971, he filed his election to retire conditioned upon his entitlement to 20 years of service credit under the Judges' Retirement Law.[1] The State Controller conceded that plaintiff

---

\*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

[1] Government Code section 75000 et seq.

was entitled to the time served as city attorney but ruled that as an assistant legal counsel for an irrigation district he was not a "public legal officer" under sections 75076 and 75030.5 of the Judges' Retirement Law. and, consequently, not entitled to retirement service credit therefor. He sought a writ of mandate to require the Controller to credit the disputed time to his service record. The trial court upheld the Controller's ruling, made its findings of fact and conclusions of law and entered judgment against plaintiff. Plaintiff's appeal therefrom involves the single issue of whether or not an assistant legal counsel for an irrigation district is a "public legal officer" as defined in said statute and entitled to receive retirement service credit for time served in that capacity.

By an amendment effective on May 1, 1962, Government Code section 75030.5 defined the term "public legal officer" as "the holder of any legal office of the State or any agency of the State or of any county or city in the State who is paid a salary or other fixed compensation and who is admitted and licensed to practice law in the State of California during the time of holding said office and whose principal duties in said office are legal in nature, such as Attorney General, Legislative Counsel, Commissioner of Corporations, district attorney, county counsel, city attorney, city prosecutor, public defender, or deputy of any such office, or a secretary to the Governor whose duties include the hearing of extradition matters . . . ."

The section provided that a judge who had served as such officer before becoming a judge had a right to receive credit in the retirement system for all or any part of the time served as such. Section 75030.10 of said code accorded the same rights to a judge who had filed his declaration of candidacy for judicial office prior to May 1, 1962. Plaintiff's declaration of candidacy had been so filed. If counsel for an irrigation district is a public legal officer within the meaning of said statute, plaintiff is entitled to 20 years' retirement service credit and thus qualified for retirement at 75 percent of his judicial salary. If not, he would have been entitled to 15 years of retirement service credit and to retirement at 50 percent of salary.

 We have reached the conclusion that the judgment must be affirmed for the following reasons: The word "legal" is used adjectively in said section 75030.5, and although it limits or narrows the import of the term "public . . . office," it does not otherwise change its meaning. A public office must therefore exist before there can be a public officer—an office that would exist "independently of the presence of a person in it." (*Pacific Finance Corp.* v. *Lynwood* (1931) 114 Cal.App. 509, 514 [300 P. 50].)

The Legislature's use of the generic term "public .·. . officer" in the Judges' Retirement Law must be assumed to have been in its legally accepted sense. *City of Long Beach* v. *Payne* (1935) 3 Cal.2d 184, 191 [44 P.2d 305], indicates the existence of an "almost irresistible" presumption that if, in the same context, the Legislature employs words or expressions that have been judicially defined, it has employed them in the sense so defined.

There are numerous decisions dealing with the distinction between public employment and public office. One of the earliest is the 1823 opinion of Chief Justice Marshall (sitting with George Hay as the United States Circuit Court of Virginia) in *United States* v. *Maurice,* 2 Brock. 96 [F. Cas. No. 15747], wherein, at page 103, he states: "Although an office is 'an employment,' it does not follow that every employment is an office. A man may certainly be employed under a contract, express or implied, to do an act or perform a service, without becoming an officer."

In 1899, the California Supreme Court in *Patton* v. *Board of Health etc.,* 127 Cal. 388 [59 P. 702], observed at page 393 that while there was no "universally applicable definition" of the term, "[i]t seems to be agreed by all writers that certain things are requisite to make a given employment a public office and its incumbent a public officer. . . . One of the requisites is that the office itself must be created by the constitution of the state or it must be authorized by some statute."

Subsequent decisions have added to that requisite the concept that the person or position in question must be delegated with authority to perform a public duty or function that constitutes the exercise of an aspect of governmental sovereignty, whether of the legislative, executive or judicial branch. (*Main* v. *Claremont Unified School Dist.* (1958) 161 Cal.App. 2d 189, 198 [326 P.2d 573]; *Bennett* v. *Superior Court* (1955) 131 Cal. App.2d 841, 844 [281 P.2d 285]; *Couts* v. *County of San Diego* (1934) 139 Cal.App. 706, 712-713 [34 P.2d 812].) ■ The fact that section 75030.5 includes deputies of public legal officers, and that deputyships are frequently created or their number increased simply by budget authorization, does not eliminate the application of these traditional concepts of constitutional or statutory authorization and delegated power of sovereignty in determining whether or not the principal office in which a deputy is employed is a public legal office within the meaning of said section.

■ An irrigation district is a public corporation or agency of the state and has only such powers as are given to it by the Legislature. (*Allen* v. *Hussey* (1950) 101 Cal.App.2d 457 [225 P.2d 674].) Its internal organization is prescribed by part 3 of division 11 of the Water Code with

additional provisions affecting districts that comprise over 500,000 acres in part 5 thereof. Chapter 1 of part 3 is entitled "Officers" and consists of six articles (§§ 21100-21195). Specific provisions thereof mention only the offices of directors, assessor, collector, treasurer and secretary. Unlike charters or statutes governing the organization of cities or counties, the Water Code contains neither mention of the office of district counsel or attorney nor a description of the powers, duties and function thereof. The act appears to vest sole responsibility for the management and conduct of the affairs and business of the district in the directors (§ 21385). But section 21185 provides that the board "shall (a) Employ agents, officers and employees as required [and] (b) Prescribe their duties and fix their salaries."

Plaintiff urges with considerable eloquence that this section supplies the constitutional or statutory authorization referred to in cases above cited as one of the requisites to the existence of a public office. We may assume arguendo, without conceding,[2] that plaintiff's contention is correct, and that the board could have created the office of counsel of the district and constitute him a "public legal officer" (just as a county counsel) and thus satisfy the requirements of the Judges' Retirement Law. The determinative question then becomes: Did the board do so?

Certain formalities must attend the official acts of boards of directors or other governing bodies of a public entity or agency whose powers are derived from and depend solely upon a charter or statute authorizing their creation. In a matter of such obvious importance as the creation of a new office, one would expect at least an explicit motion defining the official powers and duties delegated to the office created. Common practice would dictate the existence of a resolution, bylaw or ordinance. Here, there was no evidence presented to the trial court that would permit an inference that the board created an office as plaintiff contends. There were introduced in evidence only an affidavit by the district's general manager and two resolutions adopted at board meetings on April 12, 1923, and May 16, 1934. The affidavit sets forth the monthly rates of compensation paid to

---

[2]There are problems we need not resolve: The use of the term "employ" in section 21185 appears to import a hiring or contract of employment rather than an appointment to an office entailing the independent discharge of official duties. References in other sections to "officers and persons" (§ 21142 (requiring bonds)), to the consolidation of the three offices, named in said chapter 1 (assessor, collector and treasurer) and their combination with "*positions*" of secretary, engineer, manager, etc. (§ 21120) and to the power to fix "duties, terms and time of *employment*" (italics added) of "department heads, executives, and employees (§ 22842) combine to cast doubt on the proposition that department heads and other executives of an irrigation district occupy public offices under the language of the Water Code.

plaintiff from 1934 until 1948; states that plaintiff was carried on the "pay records" as "No. E-12," the letter E indicating "executive and thus, Petitioner was considered as Executive No. 12 on the pay records . . . ." It goes on to state that "organizational charts indicate that the Legal Department is directly responsible to the Board of Directors," its head being the chief legal counsel with his assistant or assistants designated as assistant legal counsel. It also indicates that the district contained over one million acres.[3] There is no statement therein that department heads were constituted officers of the district or considered as such. Nor does the "executive" designation carry a necessary implication that petitioner was an officer. The term "executive" is not defined in the Water Code. Its use with reference to duties of employment is quite common and in neither the affidavit nor code does it imply more than a category of employment.

The minutes of April 12, 1923, contain a resolution "that Chas. L. Childers . . . be employed as attorney for Imperial Irrigation District, at a retainer of $350.00, which retainer shall include all services rendered" excepting trial of cases or services that would require his absence from Imperial County during which periods he was to be paid $25 per day in addition to the retainer. One Phil D. Swing was also employed as "advisory counsel." Nothing therein refers to an independent office. On the contrary, the language imports the employment of an attorney on a contractual or retainer basis, who, as shown in the organizational chart, acts under the board.

The minutes of May 16, 1934, reflect the passage of a motion accepting Mr. Childers' resignation as chief counsel of the district, whereupon "Mr. Childers spoke at length on his tenure of office," recounting "important events" that had transpired, and after referring to "important legislation" that had been completed or was nearing completion, expressing his thanks to the board and various officers of the district for the courtesy and cooperation extended to him. The only official action is, of course, the passage of the motion by the board. The rest is but a record of the usual amenities that occur upon retirement of an employee or an officer.

 Plaintiff contends that Mr. Childers' reference to his "tenure of office" or the secretary's use of that phrase in the minutes is proof of the existence of an office as such, and that the retainer or employment had somehow been transformed into a public office. A complete answer to this

---

[3]This effectuates Water Code section 22842, empowering the board to provide for and create divisions or departments for management and operating purposes, appoint department heads and fix duties, terms and time of *employment,* etc.

contention is found in *Kennedy* v. *City of Gustine* (1926) 199 Cal. 251, 255-256 [248 P. 910], where the court said: "Whether a position, or office, is a public office depends 'not upon what the particular office in question may be called, nor upon what a statute may call it, but upon the power granted and wielded, the duties and functions performed and other circumstances which manifest the true character of the position and make and mark it a public office, irrespective of its formal designation.' [Citations.]"

▮ Upon this record, the finding of the trial court that plaintiff *"was employed"* (italics added) by the district and its conclusion of law that "there was not at any time here pertinent a public office existing in the Imperial Irrigation District of Assistant Legal Counsel" are fully supported by the evidence and the judgment must be affirmed.

However, the judgment is overly broad insofar as it decrees "That petitioner was not, as of July 31, 1971, entitled to a service retirement allowance under the Judges' Retirement Law." It should be modified, in the interest of accuracy, by inserting the words "of 75 percent of salary" between the words "allowance" and "under" (p. 1, 1. 28, judgment) just quoted. Modification accordingly is ordered.

As so modified, the judgment is affirmed.

Friedman, Acting P. J., and Regan, J., concurred.