[Civ. No. 23739.   Second Dist., Div. One.   Mar. 31, 1959.]

THEODORE J. CURPHEY, Petitioner, v. SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; COUNTY OF LOS ANGELES, Real Party in Interest.

Joseph A. Ball and Frederick O. Field for Petitioner.

Harold W. Kennedy, County Counsel, for Respondent.

William B. McKesson, District Attorney, for Real Party in Interest.

NOURSE, J. pro tem.*—Petitioner, the duly appointed coroner of the county of Los Angeles and an officer in the classified civil service under the charter of the county, seeks a writ of prohibition to restrain the respondent court from trying him upon an accusation returned by the grand jury of the county under section 3060 of the Government Code, charging him with wilful and corrupt misconduct in office.

There is but one question presented by the petition and the answer thereto, to wit: Is an appointed classified civil service officer of the county of Los Angeles subject to removal from office under an accusation filed by the grand jury pursuant to section 3060 of the Government Code? If the answer to this question is in the negative, the respondent court does not have jurisdiction to try the petitioner upon the accusation returned by the grand jury. We have reached the conclusion that the answer to the question must be in the negative.

It is undisputed that petitioner is an officer of the county, appointed to his office under the provisions of the county's charter and is subject to discharge or reduction in rank in the manner provided for by the charter.

It is respondent's contention that petitioner as an officer of the county is subject to the provisions of sections 3060 and 3070 of the Government Code and that he may be removed from office by proceedings had under those sections or by proceedings had in accordance with the provisions of the charter. On the other hand petitioner contends that the charter has superseded the general law and specifically the provisions of sections 3060-3070 of the Government Code and that he may only be removed in accordance with the terms of the charter.

The solution to this question depends upon the construction placed upon section 7½, article XI, of the Constitution of this state.

So far as pertinent here, section 7½ of article XI reads as follows:

"Any county may frame a charter for its own government

*Assigned by Chairman of Judicial Council.

consistent with and subject to the Constitution . . . and relating to matters authorized by provisions of the Constitution, . . .

"If a majority of said qualified electors, . . . shall vote in favor of such proposed charter, it shall be deemed to be ratified, and shall be forthwith submitted to the Legislature, . . . for its approval or rejection as a whole, . . . if approved by a majority vote of the members elected to each house, such charter shall become the charter of such county and *shall become the organic law thereof relative to the matters therein provided, . . . and shall supersede all laws inconsistent with such charter relative to the matters provided in such charter.*

"It shall be competent, in all charters, framed under the authority given by this section to provide, in addition to any other provisions allowable by this Constitution, and the same *shall provide,* for the following matters : . . .

"2. For . . . coroners . . . for the . . . appointment of said officers . . . and, . . . for the manner of their appointment ; . . .

"4. For . . . their removal ; . . . provided, that the provisions of such charters relating to the powers and duties of boards of supervisors and all other county officers shall be subject to and controlled by general laws ; . . .

"Whenever any county has framed and adopted a charter, and the same shall have been approved by the Legislature, as herein provided, the general laws adopted by the Legislature in pursuance of Sections 4 and 5 of this article, shall, as to such county, be superseded by said charter as to matters for which, under this section it is competent to make provision in such charter, . . ." (Emphasis added.)

The charter of the county of Los Angeles established a civil service commission charged with the formulation, promulgation and enforcement of a civil service program for classified officers and employees of the county. By the provisions of the charter the commission is empowered to prescribe and enforce rules for the classified service which are given the force and effect of law. The rules *must* provide for the means and manner *for the discharge* or demotion of classified officers and employees and *must provide for such discharge* or demotion *only after the officer has been notified* of the specific grounds and particular facts upon which the discharge or reduction is based and a finding by the commission after hearing that the discharge or demotion is justified.[1]

---

[1]No hearing or finding by the commission is required unless the employee by his reply puts the truth of the charges in issue and demands a hearing.

■ The manner of appointment or removal of a county officer is not a matter of statewide concern but of local concern, and control over it may be and has by section 7½ of article XI of the Constitution been placed under the control of the county under its charter. (*Pearson* v. *County of Los Angeles,* 49 Cal.2d 523 at 536 [319 P.2d 624].)

In the case just cited it was contended by the respondent county of Los Angeles that an officer of the county who had been convicted of a felony was automatically removed from office under the provisions of sections 1028 and 1770 of the Government Code. In holding that these sections were not applicable to civil service employees of the county, Mr. Justice Schauer speaking for the court said in part as follows:

"Defendants contend, however, that the Government Code sections set forth principles governing a matter of statewide concern, and therefore are controlling in this case irrespective of the provisions of section 7½ of article XI. It is settled that local rules or regulations as to matters which a county is constitutionally empowered to regulate by charter supersede general state laws on the subject, except as to matters of statewide concern where the state has occupied the field. [Citations.] But the general laws in question here do not appear to be part of an overall legislative design to occupy an entire field of law in a matter of statewide concern, as was the case with the laws relating to eminent domain [citations], or workmen's compensation [citations]. Rather, the statutes here involved relate to but a narrow segment of the field of public employees, a field which the local governments have been granted the constitutional power to regulate.

"It may be conceded that the state has an interest in establishing qualification standards for peace officers at all levels of government, and, as noted hereinabove, the power of the Legislature to prescribe such qualifications, for county officers is specifically preserved by section 5 of article XI. However, as also noted previously, section 7½ of article XI authorizes charter provisions which empower 'boards of supervisors, by ordinance' to fix and regulate the manner of appointment and removal of deputies and other attaches, and specifies that such charter provisions, and necessarily the ordinances enacted thereunder, shall control over general laws on the subject which are enacted pursuant to section 5 of article XI. If sections 1028 and 1770 of the Government Code are held to control valid charter provisions relative to removal of peace officers, then any other general law relating to removal of public

employees would also control over charter provisions, and a similar result would logically follow as to charter provisions and general laws relating to appointment of such officers and employees. Such a construction would render nugatory the constitutional provisions empowering local governments to control the manner of appointment and removal of their officers and employees. *It thus follows that insofar as general qualification statutes attempt to regulate appointment and removal of local officials, they are subordinate to provisions of freeholders' charters, and valid ordinances enacted* thereunder.'' (Emphasis added.) (See also *Hedlund* v. *Davis,* 47 Cal.2d 75 at 79 [301 P.2d 843].)

It has been uniformly held that the provisions of a freeholders' charter, granted a city pursuant to sections 8 and 8½ of article XI of the Constitution, relative to the removal or discharge of an appointed and classified officer of the city supersede the general laws relative to the removal of such an officer upon accusation by a grand jury. (*Craig* v. *Superior Court,* 157 Cal. 481 [108 P. 310]; *Dinan* v. *Superior Court,* 6 Cal.App. 217 [91 P. 806].)[2]

Respondent seeks to escape the force of the decisions in *Pearson* v. *County of Los Angeles, supra,* and the two cases last cited, upon the grounds that under the provisions of section 7½ of article XI it is only general laws enacted by the Legislature pursuant to section 5 of article XI of the Constitution that are superseded by the provisions of the charter, while under the provisions of paragraph g of section 8 of article XI the charter granted a city supersedes all laws inconsistent therewith. We see no merit in this contention. The same language as is used in paragraph g of section 8, article XI, is found in the paragraph of section 7½ captioned ''Ratification of Charter.'' In that paragraph it is provided that if the charter be approved by a majority of the vote of the members elected to each house of the Legislature ''such charter, . . . shall supersede all laws inconsistent with such charter relative to the matters provided in such charter.'' It was upon this language in section 8 of article XI that the court in *Dinan* v. *Superior Court, supra,* based its decisions that the charter of the City of San Francisco as to the removal of officers of that city superseded the provisions of sections 758, 759, 766, 767 and 769 of the Penal Code. (These sections of

---

[2]For the reasons stated in *Craig* v. *Superior Court, supra,* we do not believe the decision of the Supreme Court in *Coffey* v. *Superior Court,* 147 Cal. 525 [82 P. 75] is applicable in the present case.

the Penal Code have now been repealed and reenacted as a part of article III of title I, division 4, chapter 7 of the Government Code.) We see no reason why this language when used in section 7½ of article XI should not be given the same meaning as given it by the court in *Craig* v. *Superior Court, supra,* and *Dinan* v. *Superior Court, supra,* in construing sections 8 and 8½ of article XI. ■ We do not construe the provisions of the paragraph of section 7½ captioned ''Effect of Charter,'' wherein it is provided that the charter when adopted shall supersede the general laws adopted by the Legislature pursuant to section 5 of article XI, as a limitation upon the broad language which we have quoted from the paragraph captioned ''Ratification of Charter,'' but construe it as extending the effect of the charter so as to make it supersede all general laws as to matters which it is competent to make provisions for in a charter, whether consistent or inconsistent with the charter's provisions.

Not only does the apt language used in section 7½ of article XI as above quoted operate to make the provisions of the charter supersede any general statute as to the removal of a classified county officer but by section 16 of article XX, it is made clear that the provisions of the charter are to govern the matter of dismissals. It is there provided ''that in the case of any officer or employee of any municipality governed under a legally adopted charter, the provisions of such charter with reference to . . . *the dismissal* from office of any such officer or employee shall control.'' (Emphasis added.)

■ While it is true that section 16 of article XX refers to employees of a ''municipality governed under a legally adopted charter'' there seems to be no reason why the provisions of this section should be limited to cities governed by a charter. The Constitution provides for the issuance of charters not only to cities but also to cities and counties and to counties, and the reasons for granting control of the appointment and dismissal of appointive officers and employees of either type of public corporation being the same, the word ''municipality'' as used must be interpreted as having been used in its larger sense as including any public corporation exercising governmental powers and which may under the Constitution be granted a freeholders' charter. (*Clements* v. *T. R. Bechtel Co.,* 43 Cal.2d 227 at 234 [273 P.2d 5]; *Siler* v. *Industrial Acc. Com.,* 150 Cal.App.2d 157 at 162 [309 P.2d 910]; *Gadd* v. *McGuire,* 69 Cal.App. 347 at 368 [231 P. 754];

*Merchants Nat. Bank* v. *Escondido Irr. Dist.,* 144 Cal. 329 at 333-334 [77 P. 937].)

Respondent argues that under section 18 of article IV of the Constitution all public officers other than those subject to impeachment are subject to removal under general laws passed by the Legislature; that section 3060 et seq. of the Government Code were enacted pursuant to this constitutional provision and that therefore the charter's provisions as to removal do not supersede the provisions of the Government Code. In support of this contention it refers to the provisions of section 18 of article IV which after providing for the impeachment of certain officers provides that all other officers shall be tried for misdemeanors ''in such manner as the Legislature may provide.'' To uphold this contention it would be necessary to read the quoted language as if it read ''in such manner as the Legislature may by general law provide.'' The language used, however, is not subject to that interpretation. The approval by the Legislature of the charter was a legislative act and the charter is a law of the state and by approving a charter providing the manner and means for the removal of officers of the chartered county the Legislature did provide a manner in which they might be removed. (Municipal Corporations, § 50, 34 Cal.Jur.2d at p. 652 and cases there cited.) The method for removal or discharge of officers of the county provided for by the charter is, as we will hereinafter point out, inconsistent with that of the general laws.

It would not be consonant with the purpose sought to be accomplished by the granting of a freeholders' charter, that of granting complete autonomy to the county in those local affairs for which it is competent to provide for in a charter under the expressed provisions of section 7½ of article XI, to hold that local, classified civil service officers may be removed either by action of the grand jury or by proceedings had under the charter. If such an officer may be removed either by action of the grand jury or by proceedings had under the charter, then it is quite possible that although on a trial before the civil service commission it might hold that the charges were not substantiated, a jury in a removal proceeding commenced pursuant to the provisions of the Government Code might reach a contrary conclusion, with the result that the officer might be removed from office despite the fact that the commission charged with the administration of the civil service provisions of the charter had held to the contrary. The county would thus be deprived of the right expressly granted by its

charter to control the appointment and removal of its officers. It follows that the provisions of the Government Code above mentioned are inconsistent with the provisions of the charter and are superseded by the charter.

The alternative writ heretofore issued is discharged. Let a peremptory writ of prohibition issue as prayed for.

Fourt, Acting P. J., and Lillie, J., concurred.

The petition of respondent and the real party in interest for a hearing by the Supreme Court was denied May 27, 1959.