[Crim. No. 16180. First Dist., Div. Two. Nov. 28, 1977.]

THE PEOPLE, Plaintiff and Appellant, v.
EDWARD HULBURT, Defendant and Respondent.

COUNSEL

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Eugene W. Kaster and Dane R. Gillette, Deputy Attorneys General, for Plaintiff and Appellant.

James R. McKittrick for Defendant and Respondent.

OPINION

TAYLOR, P. J.—The People appeal from a minute order dismissing for lack of jurisdiction a grand jury accusation filed pursuant to Government Code section 3060 against Hulburt, a deputy sheriff, for willful or corrupt misconduct in office during the campaign for the 1974 election of the Sheriff of Humboldt County. Two questions are raised by this appeal: 1) whether as a deputy sheriff of a general law county Hulburt is an "officer" within the meaning of Government Code section 3060; and 2) if so, is he deprived of equal protection of the laws under the Fourteenth Amendment of the United States Constitution, as a deputy sheriff of a charter county is not subject to proceedings pursuant to Government Code section 3060 but can be removed only by county civil service proceedings. We have concluded that the order of dismissal must be reversed, as Hulburt was an officer within the meaning of Government Code section 3060 and is not deprived of equal protection.

Hulburt denied the allegations of the accusation, and on January 13, 1976, moved to dismiss on the ground that he could be removed from office only pursuant to the Humboldt County civil service regulations and not by a proceeding pursuant to Government Code section 3060.[1] The county civil service proceedings could be commenced only on recommendation of the sheriff. Sheriff Cox admitted that as of February 1976, no disciplinary proceedings against Hulburt had been initiated with the county civil service commission,[2] although the grand jury

---

[1] His motion was accompanied by the affidavit of Sheriff Cox stating that Hulburt was subject to the county civil service ordinance.

[2] Under the applicable provisions of the County Civil Service Rules, any disciplinary proceedings for "inexcusable neglect" and "improper political activity" (rule X, § 1, subds. (d) and (f)) commenced with a written notice from the department head or appointing power to the personnel department and the clerk of the board of supervisors (rule X, § 2).

charges had been filed nine months earlier, in May 1975. Hulburt's motion was denied by Judge Petersen[3] on February 18, 1976,[4] on the ground that the county was a general law county and that its civil service regulations did not govern Hulburt's removal from office.

Hulburt thereafter filed a petition for a writ of mandamus or prohibition to block the Government Code section 3060 proceedings. This court denied the writ on March 15, 1976, and the state Supreme Court subsequently denied a hearing on April 14, 1976 (*Hulburt* v. *Superior Court,* 1 Civ. No. 38600, of which we take judicial notice pursuant to Evid. Code, § 452).

On August 5, 1976, Hulburt filed his second motion to dismiss on identical grounds. This motion was heard by Judge Newsom,[5] and granted on the ground that only the county civil service commission could hear and act on Hulburt's removal. This appeal is from the subsequent minute order dated October 18, 1976, dismissing the accusation.

The facts are not in dispute. On May 23, 1975, the Humboldt County Grand Jury pursuant to Government Code section 3060 filed an accusation against Hulburt, a captain in the county's sheriff's department, for

---

[3]Judge Petersen was assigned to hear the matter from another county, by the Judicial Council.

[4]By an order dated January 17, 1977, this court augmented the record of this appeal to include Hulburt's January 13, 1976 motion and supporting documents and the ruling of Judge Petersen.

[5]Judge Newsom, like Judge Petersen, was assigned from a different county by the Judicial Council. The record indicates that prior to this assignment Judge Newsom had heard a companion case involving Sheriff Cox. Hulburt argues that therefore the People had notice of Judge Newsom's view that the matter was under the sole jurisdiction of the county civil service commission, and could have moved to disqualify Judge Newsom, pursuant to Code of Civil Procedure section 170.6.

This contention evades the issue of the propriety of Hulburt's second motion (admittedly identical to his first motion that had been denied and with no allegations or proof of any changed circumstances), the inference of "judge shopping," and the fact that both of the assigned judges were sitting as members of the same tribunal (*In re Kowalski,* 21 Cal.App.3d 67, 70 [98 Cal.Rptr. 444]). Although a court has the discretion to permit the renewal of a motion to dismiss, a different result constitutes an abuse of discretion unless there are changed circumstances (*In re Kowalski, supra,* at pp. 70-71). A somewhat similar procedural contention was before us in *Citizens for Parental Rights* v. *San Mateo County Bd. of Education,* 51 Cal.App.3d 1, footnote 1, at page 6 [124 Cal.Rptr. 68], where we upheld the dismissal of a renewed motion identical to a prior motion. We think here, in the absence of changed circumstances, the court abused its discretion in granting the second motion to dismiss. However, because this case involves undetermined issues of public interest, we elect to consider the merits.

willful or corrupt misconduct in office during the 1974 election of the Sheriff Gene Cox. The specific charges may be summarized as follows: In May, June and July 1974, Hulburt: 1) campaigned for the reelection of the sheriff while on duty in uniform and on the premises of the sheriff's department; 2) solicited contributions from other deputies while on duty; 3) directed and supervised other deputies who circulated petitions for signatures; 4) used his authority and influence to pressure other deputies of the sheriff's department to sign petitions supporting the reelection of Cox; and 5) used his influence so that during the campaign, certain citations were dismissed prior to prosecution, and also suggested that citations for certain offenses be halted until after the election.

Government Code section 3060[6] provides: "An accusation in writing against *any officer of a* district, *county,* or city, including any member of the governing board of a school district, *for wilful or corrupt misconduct in office, may be presented by the grand jury of the county* for or *in which the officer accused is* elected or *appointed.* An accusation may not be presented without the concurrence of at least 12 grand jurors." (Italics added.) This statute provides for a special action at law and is neither an indictment (*In re Burleigh,* 145 Cal. 35 [78 P. 242]; *People* v. *Hale,* 232 Cal.App.2d 112 [42 Cal.Rptr. 533]), nor a prosecution for a crime in the ordinary sense of the word (*In re Reid,* 182 Cal. 88 [187 P. 7]), or an impeachment (*McComb* v. *Commission on Judicial Performance,* 19 Cal.3d, Spec. Trib. Supp. 1, fn. 4, at p. 9 [138 Cal.Rptr. 459, 564 P.2d 1]).

The first question presented is whether a deputy sheriff is an "officer" subject to removal pursuant to the above statute. Hulburt argues that the purview of section 3060 is limited to department heads and urges that, therefore, the statute cannot be applied to him. No authority is cited for this contention. The existing case law provides no support for Hulburt's contention but indicates that officers other than department heads are subject to removal under the statute. (See *People* v. *Becker,* 108 Cal.App.2d 764 [239 P.2d 898] (a director of board of education).) *People* v. *Hale,* 232 Cal.App.2d 112, at page 119 [42 Cal.Rptr. 533], refers simply to officials who commit crimes or commit malfeasance in office. Nor under the instant facts can it be easily contended that Hulburt is only a subordinate. The uncontroverted evidence indicates that he was a captain with supervisory duties.

Further, section 3060 applies by its terms to both elective and appointed officers. Hulburt was appointed by the sheriff. The county

---

[6]All subsequent references are to the Government Code, unless otherwise stated.

officers specifically enumerated by section 24000 (set forth so far as pertinent below)[7] include the sheriff, who is unquestionably an officer subject to section 3060 proceedings (*People* v. *Mullin,* 197 Cal.App.2d 479 [17 Cal.Rptr. 516]). Section 24100 also provides: "Whenever the official name of any principal officer is used in any law conferring power or imposing duties or liabilities, it includes deputies." This language implies that a deputy sheriff upon appointment acquires all of the attributes of the sheriff, including the potential liability for removal pursuant to section 3060.

*People* v. *Gonzales,* 136 Cal.App.2d 437 [288 P.2d 588], held at pages 441-442 that a deputy sheriff was a "public officer" for purposes of former Code of Civil Procedure section 1881, subdivision 5 (now Evid. Code, §§ 1040-1042) pertaining to the disclosure of confidential informants. The court held that since the sheriff is a "public officer," his deputy who possesses all of the powers and may perform all of the duties of the sheriff, is also a public officer. *Gonzales, supra,* was followed in *Litzius* v. *Whitmore,* 4 Cal.App.3d 244 [84 Cal.Rptr. 340], so far as pertinent, at page 249, as follows: "And in *Parsons* v. *County of Los Angeles,* 37 Cal.App.2d 666, 672 [99 P.2d 1079], it was held: 'It is a well-settled rule of law that where there are no restrictive provisions the power of appointment carries with it the power of removal.'

"It is also established that in the absence of contravening civil service rules . . . a county sheriff has 'the absolute right to appoint and discharge any and all deputies and other employees required for the conduct of the office' to which he has been elected. (*Cronin* v. *Civil Service Com.,* 71 Cal.App. 633, 636 [236 P. 339].)

"Government Code section 26608.2, quoted in full, *ante,* provides that San Francisco may *'request'* Sheriff Whitmore to deputize its employees in order that they may perform police duties in San Mateo County. It then states: 'The sheriff *may* appoint such deputies.' (Italics added.) It is made clear by the statute that a discretion whether to appoint any specific person rests with the sheriff, and that neither San Francisco nor Litzius has a *right* to secure his reappointment.

"*The soundness of the rule granting a county sheriff wide discretion in the employment, and termination of employment, of his deputies becomes even more apparent when we consider the legal status of the deputy and his*

---

[7]Section 24000: "The officers of a county are:. . . . . (b) A sheriff. . . . (w) Such other officers as are provided by law."

*relation to the sheriff. People* v. *Gonzales,* * 136 Cal.App.2d 437, 441-442 [288 P.2d 588], states 'a deputy sheriff is a public officer . . . for the reason that *a county officer is a public officer . . .; a sheriff is a county officer, and a deputy sheriff possesses all the powers and may perform all the duties attached by law to his principal's office. . . .' Foley* v. *Martin,* 142 Cal. 256 [71 P. 165, 75 P. 842, 100 Am.St.Rep. 123], holding that a sheriff may be liable in compensatory damages for the tort of his deputy, states (p. 260), quoting earlier authority, ' "The act constituting the cause of action is that of the defendant [sheriff], and, though done through a deputy, is considered in law as done directly and personally by him." [Citation.]' More recently in *County of Placer* v. *Aetna Cas. & Surety Co.,* 50 Cal.2d 182, 187 [323 P.2d 753], the same court stated: *'A sheriff is responsible for the acts of his deputies, for they are acting in his private service and in his name and stead, and are only public officers through him. The deputy is not the agent or servant of the sheriff but is his representative, and the sheriff is liable for his acts as if they had been done by himself.'* " (Italics partially supplied.)

Here, county civil service commission rule IV provided for recruitment and competitive examinations by the county personnel director. Section 5 states that: *"Certification The appointing powers* shall fill a vacancy *by selecting one of the six persons* standing highest on the appropriate employment list. . . .

"Whenever a vacant position requires that an employee be of a particular sex, or that the position has special lifting or pushing requirements, or that it requires residence in a certain locality, willingness and ability to work certain unusual hours or at a certain location, or other special qualifications, *the Personnel Director may, upon written request by the appointing authority,* certify only those candidates who meet the required employment conditions." (Italics added.)

Thus, here, the county civil service rules required only that the sheriff make the appointment by selecting one of the six persons standing highest on the list. The sheriff, as the appointing power, had the final authority; while not as totally unfettered as that of the San Francisco sheriff in *Litzius, supra,* the analogy holds.

Further, section 24101 provides: *"Every county* or district *officer,* except a supervisor or judicial officer, *may appoint as many deputies as are*

---

"*Disapproved on unrelated point in *People* v. *McShann* (1958) 50 Cal.2d 802, 808 [330 P.2d 33]."

*necessary for the prompt and faithful discharge of the duties of his office."* (Italics added.) This statute permits the sheriff to appoint as many deputies as needed. Here again, the county civil service rules go only to the manner of appointment.

The criteria used to determine whether a particular position constitutes a "public office" are not easy to apply. In *Leymel* v. *Johnson,* 105 Cal.App. 694 [288 P. 858], the court pointed out, at page 699, that the title of the position is not so important as the power, duties, and functions incident to it. Among the prime considerations are that the office is created by the Constitution or authorized by statute and that the incumbent is "clothed with a part of the sovereignty of the state." The court concluded that one of the necessary characteristics of a public officer is that he perform a "public function for the public benefit," and exercise "some of the sovereign powers of the state." The *Leymel* criteria were applied in *Main* v. *Claremont Unified School District,* 161 Cal.App.2d 189 [326 P.2d 573], to hold that a school superintendent was an employee rather than an officer. The court noted (at p. 198) that a contract of employment is essentially inconsistent with status as a public officer, who is usually elected or appointed. The court also noted (at p. 204) that whether or not an individual exercises independent power was also significant. A deputy sheriff exercises considerable independent power and performs a public function for the public benefit.

We also note that Penal Code section 830.1 provides that sheriffs and their deputies are "peace officers" (*Estrada* v. *Indemnity Ins. Co.,* 158 Cal.App.2d 129, 134 [322 P.2d 294]). In *Logan* v. *Shields,* 190 Cal. 661, 665 [214 P. 45], a traffic officer was held to be a public officer rather than an employee. In *Humbert* v. *Castro Valley Fire Protection Dist.,* 214 Cal.App.2d 1 [29 Cal.Rptr. 158], the court noted at page 12 that while police officers were "public officers," there was some question as to firemen.

Hulburt, like the court below, relies on *Curphey* v. *Superior Court,* 169 Cal.App.2d 261 [337 P.2d 169], to argue that he can be removed only pursuant to the county civil service regulations (discussed above). *Curphey* involved the County of Los Angeles, a charter county, whose civil service regulations provided for the removal of persons holding positions similar to Hulburt. The court held that section 3060 was inapplicable to the removal proceedings of a subordinate officer, and at pages 268 and 269, reasoned that Los Angeles County could not be

deprived of the right expressly granted by its charter to control the appointment and removal of its officers.

Charter counties are organized pursuant to the state Constitution, whose provisions, so far as pertinent, state that "County charters . . . shall supersede . . . all laws inconsistent therewith" (art. XI, § 3). Humboldt County, however, is a general law county; the authority for the compensation and removal of its officers lies with the state Legislature, as well as the governing board of the county. Article XI, section 1, subdivision (b) of the state Constitution provides, so far as pertinent: "The governing body [of the county] shall provide for the number, compensation, tenure, and appointment of employees."

In *Bennett* v. *Superior Court,* 131 Cal.App.2d 841, 843 [281 P.2d 285], the court held that a clerk of a judicial district court was a public officer. In doing so, the court noted that a position will be considered an office when the Legislature creates it, prescribes the duties, and fixes the compensation, and the duties pertain to the public and are continuing and permanent. In such a case, some portion of the sovereign functions of government are exercised for the benefit of the public, and, therefore, give the employment the dignity and importance of an office. The identical rationale applies to Hulburt's position of deputy sheriff.

■ As the cases and the statutes discussed above indicate, the position of deputy sheriff is one created by the Legislature, the duties are fixed, and the Constitution grants the Legislature or county governing body authority to set compensation. The duties clearly pertain to the public and are for the benefit of the public. For those reasons, a deputy sheriff is a public officer and, therefore, subject to removal pursuant to section 3060.

Humboldt's civil service commission regulations, unlike those of a charter city, do not purport to supersede the provisions of the general statute (§ 3060). Section 31101 provides: "This part does not limit any powers conferred on any county by charter nor does it limit any powers conferred on the board of supervisors of counties of this State by the first paragraph of Section 5 of Article XI of the Constitution of this State." We conclude that Hulburt was an officer within the meaning of section 3060, and that the county's civil service regulations do not preclude an accusation and proceedings pursuant to that statute.

 The parties have not cited, and our research has not disclosed, any authorities discussing the second question raised by Hulburt, namely, whether, in the light of *Curphey,* discussed above at pages 411-412, our holding that he is subject to section 3060 proceedings, constitutes a deprivation of equal protection of the laws under the Fourteenth Amendment of the Constitution of the United States.

Hulburt urges that the difference in the application of section 3060 between charter counties and general law counties,[8] is a denial of equal protection. However, his argument is couched in general terms and does not discuss whether the traditional rational relationship test or the strict scrutiny[9] test is the appropriate one in the instant case.

The United States Supreme Court has applied the strict scrutiny test where the right to vote is involved (cf. *McDonald* v. *Board of Election,* 394 U.S. 802 [22 L.Ed.2d 739, 89 S.Ct. 1404]; *Williams* v. *Rhodes,* 393 U.S. 23 [21 L.Ed.2d 24, 89 S.Ct. 5]). The right to vote is "a 'fundamental political right' that is 'preservative of all rights.' *Yick Wo* v. *Hopkins,* 118 U.S. 356, 370." (*Rhodes, supra,* at p. 38 [21 L.Ed.2d at p. 36].) "No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined." (*Wesberry* v. *Sanders,* 376 U.S. 1, 17 [11 L.Ed.2d 481, 492, 84 S.Ct. 526].) The crimes here alleged against Hulburt would undermine the electoral process, and, therefore, for purposes of the equal protection clause, this case falls in the same category as cases involving the right to

---

[8]This state's distinctions between charter and general law counties have long been well established. In *Hunt* v. *Superior Court,* 178 Cal. 470 [173 P. 1097], the county treasurer was charged pursuant to former Penal Code section 758, the predecessor of Government Code section 3060. As the county's charter did not become effective until after the election of the treasurer, the court held that he took office under the general law then in effect and could be charged pursuant to the Penal Code although his successors who took office after the effective date of the charter would be governed by the charter provisions.

[9]Under the traditional test, the question is merely whether there is a rational relationship between the enactment and a legitimate state purpose. For example, in *Lockport* v. *Citizens for Community Action* (1977) 430 U.S. 259 [51 L.Ed.2d 313, 97 S.Ct. 1047], the United States Supreme Court upheld against an equal protection challenge certain New York constitutional and statutory provisions that required, for the approval of a new county charter, a separate majority of voters living in a city within the county, and voters living outside the cities in the county; in *Ector* v. *City of Torrance,* 10 Cal.3d 129 [109 Cal.Rptr. 849, 514 P.2d 433], the California Supreme Court rejected the strict scrutiny test (which requires a compelling governmental interest) and applied the traditional test to uphold the validity of a charter provision imposing a residence requirement on municipal employees, under the equal protection clause of the federal Constitution.

vote. Here, the distinction between charter and general law counties is not significant in view of the relationship of the integrity of the electoral process to the fundamental right to vote.

The compelling governmental interest is aptly illustrated by the instant facts. The county civil service regulations provide for the written commencement of disciplinary proceedings only upon the action of the department head or appointing power, namely, Sheriff Cox. The uncontroverted evidence here indicates that nine months after the filing of an accusation against Hulburt for felony violations of the then applicable elections law,[10] Cox had initiated no steps to discipline Hulburt, who had helped Cox win the 1974 election.[11]

In applying the strict scrutiny test, we must consider the facts and circumstances behind the law, the interests that are here protected by the application of section 3060, and the interests of those, like Hulburt, who are allegedly disadvantaged by the classification. We think the balance here is clearly in favor of the compelling governmental interest, the integrity of the electoral process. We can see no denial of equal protection in holding subject to section 3060 a public officer who is accused of felonies and misdemeanors that undermine a county election.

The judgment is reversed.

Kane, J., and Rouse, J., concurred.

A petition for a rehearing was denied December 28, 1977, and respondent's petition for a hearing by the Supreme Court was denied February 22, 1978.

---

[10]In 1974, the applicable penal statutory provisions were former Elections Code: 1) section 29130 (which classified as a felony an attempt to influence or deter a vote by force, threats, menaces, bribery, or an attempt by any means whatever to awe, restrain, hinder); 2) sections 29131 and 29132 (which classified as misdemeanors use of intimidation in any manner, interference with the free exercise of the franchise by duress); 3) sections 29134 and 29135 (which prohibited intimidation or wrongful influence by an employer in certain ways (2 Witkin, Cal. Crimes (1963 ed.) § 892, p. 837). In 1976, these provisions were repealed and most of their substance reenacted as present Elections Code section 29630.

[11]Cox indirectly indicated his willingness to do so upon the completion of the instant proceedings. We need only comment that if Cox had acted promptly, neither the instant proceedings nor the prior writ would have been necessary.