[No. B022994. Second Dist., Div. One. June 25, 1987.]

LOS ANGELES COUNTY SAFETY POLICE ASSOCIATION,
Plaintiff and Appellant, v.
COUNTY OF LOS ANGELES et al., Defendants and Respondents.

COUNSEL

Silver, Kreisler, Goldwasser & Shaeffer, Stephen H. Silver and Lesley A. Sive for Plaintiff and Appellant.

De Witt W. Clinton, County Counsel, and Steven L. Houston, Deputy County Counsel, for Defendants and Respondents.

OPINION

HANSON (Thaxton), Acting P. J.—

INTRODUCTION

This appeal arises from the superior court's judgment denying appellant and petitioner Los Angeles County Safety Police Association's petition for writ of mandate. This opinion will refer to the appellant as "petitioner," and to the County of Los Angeles and the Los Angeles County Board of Supervisors as "respondents."

Petitioner filed its petition on March 26, 1986, seeking to have respondents comply with California Penal Code section 830.4, subdivision (h) by renaming "Security officers of the County of Los Angeles" as "Safety police officers of the County of Los Angeles" for all employment-related purposes.

After respondents' answer and petitioner's response, the trial court heard the matter on July 22, 1986, and in its July 28, 1986, statement of decision, denied the petition. Petitioner filed its September 9, 1986, notice of appeal from a judgment signed on August 5, 1986.

## FACTS

Respondents accept petitioner's factual statement, except that they deny they have failed to comply with Penal Code section 830.4, subdivision (h).

Petitioner, the certified majority representative of employees the respondents identify as "Security officers," is an employee organization as defined by California Government Code section 3501.

Until 1984, pursuant to Penal Code section 830.4, subdivision (h), the peace officers of petitioner's membership were designated as "Security officers of the County of Los Angeles." In 1984, the California Legislature amended section 830.4, substituting the words "Safety police officers" for the words "Security officers" in subdivision (h).[1] That section defines the duties and authority of the employees involved in this appeal.[2]

Respondent Los Angeles County Board of Supervisors establishes the name and title of county employees. Petitioner requested respondent's representatives to change the name, "Security Officers of the County of Los Angeles," to "Safety Police Officers of the County of Los Angeles," according to statutory language. Respondent refused.

Kathie King, a member and former president of petitioner's board of directors, and a Los Angeles County security officer for nine years, submitted a declaration supporting the petition. It stated that changing the employee title would cause petitioner's membership to gain significant non-economic benefits, increased officer safety, improved employee morale, and increased ease in performing the officers' duties.

Elliot Marcus, acting deputy director of employee relations for respondent County of Los Angeles, submitted a declaration opposing the petition. It stated that respondent currently deems petitioner's members peace

---

[1] See Historical Note, 50 West's Annotated Penal Code (1985 ed.) section 830.4, page 306.

[2] Penal Code section 830.4 states, in part: "The following persons are peace officers while engaged in the performance of their duties in or about the properties owned, operated, or administered by their employing agency, or when they are required by their employer to perform their duties anywhere within the political subdivision which employs them. These officers shall also have the authority of peace officers anywhere in the state as to an offense committed, or which there is probable cause to believe has been committed, with respect to persons or property the protection of which is the duty of the officer or when making an arrest pursuant to Section 836 of the Penal Code as to any public offense with respect to which there is an immediate danger to person or property or of the escape of the perpetrator of the offense. These peace officers may carry firearms only if authorized by, and under such terms and conditions as are specified by, their employing agency: . . . [¶] (h) Safety police officers of the County of Los Angeles."

officers while performing their duties. His declaration further stated that since the most recent collective bargaining agreement began, the petitioner's members' duties, wages, hours, and other employment terms and conditions have not changed. Neither their status nor their authority as peace officers under section 830.4, subdivision (h) has changed; they perform the same functions and receive the same employee benefits.

The petition sought a writ of mandate to command respondents to rename petitioner's employee members "Safety Police Officers of the County of Los Angeles." The trial court's July 22, 1986, statement of decision denied the petition on three grounds.

First, citing section 4 of Statutes 1984, chapter 610, page 2339, which amended section 830.4, the trial court construed that the Legislature intended to vest peace officer powers in county security officers, not to mandate counties to change job titles or civil service classifications.

Second, California Constitution article XI, section 3, vests matters of local concern in the county, and designation of civil servants to act as security officers is a matter of local concern. Los Angeles County Charter section 35 empowers respondent board of supervisors to classify all positions included in the system.

Third, the trial court found that since the Legislature did not intend its 1984 amendments to section 830.4 to change either the benefits or status of petitioner's members, and because changing those employees' job title would not cause any practical benefits to them, the petitioner sought to enforce a purely theoretical claim for relief.

## ISSUES

Petitioner on appeal claims that:

1. County of Los Angeles security officers lack authority to exercise their peace officer powers until they are renamed;

2. The trial court erroneously interpreted the Legislature's intent regarding Penal Code section 830.4, subdivision (h);

3. The definition of persons who may exercise peace officer powers is a matter of statewide concern; and that

4. County security officers will gain significant benefits by being renamed safety police officers.

STANDARD OF REVIEW

■ The lack of substantial evidentiary dispute about petitioners' duties makes the proper interpretation of statutory language a question of law which this court reviews de novo, independent either of the trial court's ruling or of its rationales. (*Ames* v. *Board of Retirement* (1983) 147 Cal.App.3d 906, 916 [195 Cal.Rptr. 453]. See also *Merrill* v. *Department of Motor Vehicles* (1969) 71 Cal.2d 907, 917 [80 Cal.Rptr. 89, 458 P.2d 33].)

DISCUSSION

A.

■ Petitioner erroneously argues that unless respondents rename the employees, those employees will lack authority to exercise peace officer powers pursuant to Penal Code section 830 et seq. The purpose of Penal Code section 830 et seq. is "to authorize the named persons to exercise the statutory powers of a peace officer." (*Dyas* v. *Superior Court* (1974) 11 Cal.3d 628, 635-636, fn. 3 [114 Cal.Rptr. 114, 522 P.2d 674].) Failure of a category of peace officers to appear on any of the lists in Penal Code chapter 4.5, however, does not deprive it of peace officer authority. "[P]eace departments could exist and law enforcement powers be exercised by organizations not named in the section." (*Boxx* v. *Board of Administration* (1980) 114 Cal.App.3d 79, 85 [170 Cal.Rptr. 538].)

B.

■ Respondents claim that the home rule provisions of the California Constitution bar the relief petitioner requests. Citing *Curphey* v. *Superior Court* (1959) 169 Cal.App.2d 261 [337 P.2d 169], respondents argue that California Constitution, article XI, section 4[3] provides Los Angeles County,

---

[3] California Constitution, article XI, section 4 states in its entirety: "County charters shall provide for: [¶] (a) A governing body of 5 or more members, elected (1) by district or, (2) at large, or (3) at large, with a requirement that they reside in a district. Charter counties are subject to statutes that relate to apportioning population of governing body districts.

"(b) The compensation, terms, and removal of members of the governing body. If a county charter provides for the Legislature to prescribe the salary of the governing body, such compensation shall be prescribed by the governing body by ordinance.

"(c) An elected sheriff, an elected district attorney, other officers, their election or appointment, compensation, terms and removal.

"(d) The performance of functions required by statute.

"(e) The powers and dutes of governing bodies and all other county officers, and for consolidation and segregation of county officers, and for the manner of filling all vacancies occuring therein.

as a charter county, with exclusive control over their civil service systems, and particularly over classifying employee titles.

*Curphey,* however, involved a county whose charter expressly granted it the right to control the appointment and removal of its officers. *Curphey* simply upheld the county's right to remove classified civil service officers by proceedings under the charter, rather than permitting removal by a jury pursuant to the California Government Code.

This result conformed to the purpose of granting a charter—"granting complete autonomy to the county in those local affairs for which it is competent to provide for in a charter"—under the California Constitution. It also avoided the difficulty that could arise if removal proceedings under a grand jury reached a different result than removal proceedings under a civil service commission. (*Id.,* at pp. 268-269.)

*Curphey* thus involved different issues than those in the case before us. First, the instant case involves renaming a class of county employees, not the removal of an individual. Second, the naming of these employees, as we discuss below, is a matter of statewide, not local, concern. Third, the case at bench involves no potential for alternative forums to reach inconsistent findings in adjudicating a removal proceeding.

The rules concerning what constitutes a matter of statewide as opposed to local concern are familiar. ■ "As to matters which are of statewide concern, ... home rule charter cities remain subject to and controlled by applicable general state laws regardless of the provisions of their charters...." (*Bishop* v. *City of San Jose* (1969) 1 Cal.3d 56, 61 [81 Cal.Rptr. 465, 460 P.2d 137].) The applicability of a state statute turns on whether it addresses matters of statewide or strictly local concern. (*Baggett* v. *Gates* (1982) 32 Cal.3d 128, 136 [185 Cal.Rptr. 232, 649 P.2d 874].) The courts decide this issue under the facts of each case. (*Professional Fire Fighters,*

"(f) The fixing and regulation by governing bodies, by ordinance, of the appointment and number of assistants, deputies, clerks, attachés, and other persons to be employed, and for the prescribing and regulating by such bodies of the powers, duties, qualifications, and compensation of such persons, the times at which, and terms for which they shall be appointed, and the manner of their appointment and removal.

"(g) Whenever any county has framed and adopted a charter, and the same shall have been approved by the Legislature as herein provided, the general laws adopted by the Legislature in pursuance of Section 1(b) of this article, shall, as to such county, be superseded by said charter as to matters for which, under this section it is competent to make provision in such charter, and for which provision is made therein, except as herein otherwise expressly provided.

"(h) Charter counties shall have all the powers that are provided by this Constitution or by statute for counties."

*Inc.* v. *City of Los Angeles* (1963) 60 Cal.2d 276, 294 [32 Cal.Rptr. 830, 384 P.2d 158].) ■ The California Constitution's home rule provisions do not place police departments of charter cities beyond the reach of statutes addressing matters of statewide concern, even where those statutes affect local regulation. (*Baggett* v. *Gates, supra,* 32 Cal.3d 128, 139.) These rules apply to charter counties. (*Sonoma County Organization of Public Employees* v. *County of Sonoma* (1979) 23 Cal.3d 296, 316 [152 Cal.Rptr. 903, 591 P.2d 1].)

The statute renaming the petitioner's employees does not affect any of the areas which California Constitution, article XI, sections 1 and 4 provide that counties will determine. Sections 1 and 4 give the county the responsibility of providing for the appointment, compensation, terms and removal of an elected sheriff, and elected district attorney, and of "other officers." Renaming security officers as safety police officers falls under none of these areas constitutionally reserved to county charter provisions. Neither does it affect matters traditionally held to be of local concern, such as county employees' compensation (*Sonoma County Organization of Public Employees* v. *County of Sonoma, supra,* 23 Cal.3d 296, 317) qualifications (*Ector* v. *City of Torrance* (1973) 10 Cal.3d 129, 132-133 [109 Cal.Rptr. 849, 514 P.2d 433], cert. den. *Ector* v. *Torrance* (1974) 415 U.S. 935 [39 L.Ed.2d 493, 94 S.Ct. 1451]), or tenure or cause for which an employee may be removed (*Pearson* v. *County of Los Angeles* (1957) 49 Cal.2d 523, 536 [319 P.2d 624]).

In any event, the California Supreme Court has rejected the proposition that *any* state intrusion upon public employment matters necessarily intrudes upon municipal affairs. (*Professional Fire Fighters, Inc.* v. *City of Los Angeles, supra,* 60 Cal.2d 276, 291.) ■ "When there is a doubt as to whether an attempted regulation relates to a municipal or a state matter, or if it be the mixed concern of both, the doubt must be resolved in favor of the legislative authority of the state." (*Abbott* v. *City of Los Angeles* (1960) 53 Cal.2d 674, 681 [3 Cal.Rptr. 158, 349 P.2d 974, 82 A.L.R.2d 385].)

■ Penal Code section 830.4 itself declares that the statute involves a matter of statewide concern. That statute in part states: "These officers shall also have the authority of peace officers *anywhere in the state* as to an offense committed, or which there is probable cause to believe has been committed, with respect to persons or property the protection of which is the duty of the officer or when making an arrest pursuant to Section 836 of the Penal Code as to any public offense with respect to which there is an immediate danger to person or property or of the escape of the perpetrator of the offense." (Italics added.)

Moreover, if renaming these officers improves morale, increases law enforcement effectiveness, or adds to the employees' safety, its benefits affect an essential service enjoyed not only by county residents, but by the innumerable nonresident citizens who visit, work, or own property in the county. (*Baggett* v. *Gates, supra,* 32 Cal.3d 128, 140.)

As respondents and petitioner agree, petitioner's employee members must undergo a training course complying with California Penal Code section 832.[4] This requirement, and petitioner's employee members' compliance, further suggest that regulation of these employees is a matter of statewide concern.

For these reasons we conclude that the California Constitution's home rule provisions do not bar the relief petitioner requests.

C.

■ Petitioner on appeal claims that in amending Penal Code section 830.4, subdivision (h), the Legislature intended to direct respondents to rename petitioner's employees as safety police officers. Respondents argue that the Legislature had already vested limited peace officer powers in those employees, and that the amendment did not intend to change their peace officer status or duties.

■ A court must ascertain the Legislature's intent to effectuate the purpose of a statute. (*People* v. *Craft* (1986) 41 Cal.3d 554, 559 [224 Cal.Rptr. 626, 715 P.2d 585].) To make that determination, we first turn to the statute's words. (*Regents of University of California* v. *Public Employment Relations Bd.* (1986) 41 Cal.3d 601, 607 [224 Cal.Rptr. 631, 715 P.2d 590].)

---

[4] California Penal Code section 832 states: "(a) Every person described in this chapter as a peace officer, shall receive a course of training prescribed by the Commission on Peace Officer Standards and Training. Training in the carrying and use of firearms shall not be required of any peace officer whose employing agency prohibits the use of firearms.

"(b)(1) Every such peace officer described in this chapter, within 90 days following the date that he was first employed by any employing agency, shall, prior to the exercise of the powers of a peace officer, have satisfactorily completed the course of training as described in subdivision (a).

"(2) Every peace officer described in Section 13510 may satisfactorily complete the training required by this section as part of the training prescribed pursuant to Section 13510.

"(c) Persons described in this chapter as peace officers who have not so satisfactorily completed the courses described in subdivision (a) as specified in subdivision (b), shall not have the powers of a peace officer until they satisfactorily complete such courses.

"(d) Any peace officer who on the effective date of this section possesses or is qualified to possess the basic certificate as awarded by the Commission on Peace Officer Standards and Training shall be exempted from the provisions of this section."

Penal Code section 830.4 does not expressly require an "employing agency" to rename any of the 13 employee categories listed. As the dispute before us suggests, this absence of express language gives rise to differing interpretations about the Legislature's intent. On one hand, if the Legislature did not expressly direct employing agencies to rename employees listed in the statute, it is possible to infer that the statute simply confers limited peace officer authority on those employees, regardless of what they are named. On the other hand, it is also possible to infer that the statute's specific language—"Safety police officers of the County of Los Angeles"— expresses the intent to direct respondent, an employing agency, to rename petitioner's employees to conform to the statute. ("[W]hatever is necessarily implied in a statute is as much part of it as that which is expressed." (*Welfare Rights Orgnization* v. *Crisan* (1983) 33 Cal.3d 766, 771 [190 Cal.Rptr. 919, 661 P.2d 1073, 31 A.L.R.4th 1214], quoting *Johnston* v. *Baker* (1914) 167 Cal. 260, 264 [139 P. 86].))

 " 'Where [statutory language] is susceptible of more than one meaning, it is the duty of the courts to accept that intended by the framers of the legislation, so far as its intention can be ascertained. . . .' To discern legislative intent, we must examine the legislative history and statutory context of the act under scrutiny." (*Sand* v. *Superior Court* (1983) 34 Cal.3d 567, 570 [194 Cal.Rptr. 480, 668 P.2d 787].)

The statute amending Penal Code section 830.4 (Stats. 1984, ch. 610, pp. 2335-2339), contained four versions of the amendments, and three sections stating the Legislature's intent.

Section 4 stated: "It is the intent of the Legislature that the changes effected by section 1 of this act shall serve only to define peace officers, the extent of their jurisdiction, and the nature and scope of their authority, powers, and duties, and that there shall be no change in the status of individuals for purposes of retirement, workers' compensation or similar injury or death benefits, or other employee benefits."[5] Section 4 tracks, with insignificant variations, language in section 2 of Statutes 1969, chapter 1506, page 3086, and repeated in subsequent amendments. It accompanied the 1971 amendment adding "Security guards of the County of Los Angeles" to the statute. (Historical Note, 50 West's Ann. Pen. Code (1985 ed.) § 830.4, pp. 301-306.)

Section 5 stated: "It is the intent of the Legislature that *the additional changes effected by Section 2* of this act serve only to rename security

---

[5]The text of section 1, to which section 4 refers, made minor changes to the final sentence of the introductory paragraph, and used the wording, "Security officers of the County of Los Angeles" in subdivision (h).

officers of the County of Los Angeles as safety police officers of the County of Los Angeles." (Italics added.)

Section 6 stated: "This act is an urgency statute necessary for the immediate preservation of the public peace, health, or safety within the meaning of Article IV of the Constitution and shall go into immediate effect. The facts constituting the necessity are: [¶] In order to give security officers charged with the protection of public employees and buidings in the City of Los Angeles increased police powers during the 1984 Summer Olympics, it is necessary that this act take immediate effect."

The actual amendment, section 2.7, was approved by the Governor on July 18, 1984, and filed with the Secretary of State on July 19, 1984. (Stats. 1984, ch. 610, p. 2335.)

Section 4 reflects the Legislature's intent to define peace officers, and their jurisdiction, authority, powers, and duties, and the Legislature's intent not to affect employee benefits.

Section 5 refers to "additional changes effected by Section 2 of this act." Comparing sections 1 and 2 reveals that the final sentence of section 1 states: "These peace officers may carry firearms only if authorized by, and under the terms and conditions specified by, their employing agency[.]" Section 2 changed this sentence to read: "These peace officers may carry firearms only if authorized by, and under such terms and conditions as are specified by, their employing agency[.]" Subdivision (h) of section 1 reads, "Security officers of the County of Los Angeles," while subdivision (h) of section 2 reads "Safety police officers of the County of Los Angeles." Section 2.7, the amendment ultimately enacted into law, preserved the changes of section 2.

Section 6 accomplished two things. It designated the amendment as an urgency statute. It also stated the facts constituting the necessity, and in so doing alluded to the Legislature's intent to "give security officers charged with the protection of public employees and buildings in the City of Los Angeles increased police powers...."

The 1971 amendment (adding "Security guards of the County of Los Angeles" to the statute) defined the extent of the jurisdiction and the nature and scope of the authority, powers, and duties of security officers of the County of Los Angeles. Though it affected no employee benefits, the amendment increased the police powers of those security officers. The 1984

amendment simply renamed those security officers "safety police officers of the County of Los Angeles."

■ " '[T]he various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole. . . .' [A] statute should not be given a construction that results in rendering one of its provisions nugatory." (*People* v. *Craft* (1986) 41 Cal.3d 554, 560 [224 Cal.Rptr. 626, 715 P.2d 585]), quoting *People* v. *Black* (1982) 32 Cal.3d 1, 5 [184 Cal.Rptr. 454, 648 P.2d 104].) "[A]n interpretation which would render terms surplusage should be avoided, and every word should be given some significance, leaving no part useless or devoid of meaning ." (*City and County of San Francisco* v. *Farrell* (1982) 32 Cal.3d 47, 54 [184 Cal. Rptr. 713, 648 P.2d 935].)

■ As we have seen, the Legislature granted peace officer authority to petitioner's member employees in 1971. As section 4 the 1984 statute stated, the Legislature did not intend to alter the employees' compensation or other benefits. Instead, section 5 expressly stated that the changes "serve only to rename. . . ." We conclude that the Legislature by implication intended that the employing agency—the respondents—perform those acts necessary to rename and identify petitioner's employees to conform to the statute. To hold otherwise would interpret the Legislature's amendments as an idle act, and a nullity.

## D.

■ Respondents argue that petitioner's right to enforce the statutory renaming of the employees is "so abstract and inchoate that the extraordinary remedy of mandamus should not be granted." Respondents cite *Clementine* v. *Board of Civ. Serv. Commrs.* (1941) 47 Cal.App.2d 112 [117 P.2d 369], also relied upon by the trial court.

In *Clementine,* respondent Board of Civil Service Commissioners approved a register of eligibles for positions in the police department. Respondent later refused to certify any names to fill vacancies. Petitioners' names appeared on that list. The trial court denied petitioners' application for a writ of mandate to compel respondent Board to certify petitioners as eligible to fill those positions.

The Court of Appeal affirmed because the register of eligibles involved in the appeal had expired. "A writ of mandate will not issue to enforce an abstract right, when the occurrence of an event subsequent to the com-

mencement of the proceeding makes the issuance of the writ of no practical benefit to the petitioner." (*Id.,* at p. 114.)

In *Clementine,* the right was abstract because the passage of time had caused the register of eligibles to lapse, thus rendering moot the questions presented to the court. That is, even had the writs issued, they "would be of no value to [petitioners] because they would not be eligible for the positions which they now seek ." (*Id.,* at p. 115.) This is the sense in which later cases citing *Clementine* have understood that opinion.[6]

The case at bench does not involve a right which is "abstract" or "moot" in the sense that the *Clementine* opinion uses these words. If a writ issues, the passage of time has not vitiated the relief petitioner seeks. Nor do we find the relief requested—the renaming of petitioners' employees—"abstract" in some other sense. It seems, to the contrary, tangible and concrete. To be sure, the renaming does not change the employees' authority, affect their compensation, or change the terms of their employment. The renaming may nevertheless help these employees perform their law enforcement duties, improve their morale and efficiency, and enhance their safety.

It might be argued that since the law has invested them with peace officer powers since 1971, changing the name by which these employees are known is simply a matter of form, without any relation to substance. We prefer to regard it instead as an effort to make form and substance cohere. These employees have hundreds of contacts with the public every month. It is important that the public accurately understand the powers such employees bring to bear in enforcing the law, and that the public not confuse them with private security guards. Any ambiguity which could create confusion in the public mind, hindering unnecessarily the employees' law enforcement capabilities and the public's own safety, should be avoided.

The law requires that the relief requested have a substantial and practical effect. (*Concerned Citizens of Palm Desert, Inc.* v. *Board of Supervisors, supra,* 38 Cal.App.3d 257, 270.) We are persuaded that petitioner's request satisfies this requirement.

---

[6]See *Palmer* v. *Wolff* (1948) 88 Cal.App.2d 979, 981-982 [200 P.2d 167]; *Terry* v. *Civil Service Commission* (1952) 108 Cal.App.2d 861, 871-872 [240 P.2d 691]; *Feder* v. *Lahanier* (1962) 200 Cal.App.2d 483, 485 [19 Cal.Rptr. 638]; *Slater* v. *City Council* (1965) 238 Cal.App.2d 864, 868 [47 Cal. Rptr. 837]; and *Concerned Citizens of Palm Desert, Inc.* v. *Board of Supervisors* (1974) 38 Cal.App.3d 257, 270 [113 Cal. Rptr. 328].

## DISPOSITION

The judgment is reversed. The matter is remanded to the superior court with direction to issue a writ of mandamus in accordance with the petitioner's request. Parties to bear their own costs on appeal.

Lucas, J., and Devich, J., concurred.

Respondents' petition for review by the Supreme Court was denied September 23, 1987.