[Crim. No. 17305. Second Dist., Div. One. May 7, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
ANTHONY EUGENE WOODS, Defendant and Appellant.

**COUNSEL**

Kathleen J. Kirkland, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Kenneth C. Young, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**LILLIE, Acting P. J.**—The trial court found defendant guilty of possession of marijuana (§ 11530, Health & Saf. Code). He appeals from the judgment and order denying his motion to suppress the evidence under section 1538.5, Penal Code.

Three or four times during the two months prior to arrest Los Angeles Police Officers Celmer and Burke had received information from several reliable confidential informants[1] that defendant "was dealing heroin and marijuana from his residence on Butler Street in Compton" and kept large quantities of narcotics there, in his back yard and on his person; the night before the arrest the last informer gave Officer Celmer defendant's address as "15811 Butler Street in Compton," and said he had purchased narcotics from him at those premises. Sergeant Burke told Officer Celmer that he had previously arrested defendant and knew he had served time for a federal violation (smuggling marijuana) and that he had also been present at a trial in Inglewood where he had been found guilty of possession of marijuana.

On September 19, 1968, Officers Celmer and Burke went to 15811 Butler Street, which is in the County of Los Angeles within the geographical limits of the sheriff's office, Firestone Substation; there was a six-foot high fence around the back yard. From the second story of a church next door they watched through a window overlooking defendant's back yard. Shortly before noon Officer Burke observed defendant come out of an area next to the garage, walk out on the lawn in the back yard, for several minutes look around and in several directions, walk back toward the rear of the yard to the north side where there appeared to be a fence, some trash cans, a little dog house and some stacked-up lumber, dig in soft dirt in that area, stand with a brown paper bag in his hand, remove something from the bag and put it in a white cardboard box, lay the box on the ground, bury the brown paper bag in the soft dirt, walk around the yard for a minute or two, then toward the side of the garage and disappear carrying the white cardboard box. Officer Celmer saw defendant leave the rear door, walk to the corner of his back yard, bend over, place his hand beneath some rubble in the corner of the yard and remove a brown paper bag, stick his hand in the bag, remove an object, place it in a small bag lying in the back yard and walk into the house. Officer Celmer then proceeded to the front and Officer Burke to the back yard. As Officer Celmer approached the front door he met a man who told him he was there to repossess defendant's car;

---

[1] There is considerable evidence in the record devoted to the reliability of the confidential informants and their identities; while these matters were argued in the lower court neither reliability nor disclosure is in issue here.

he identified himself, and the repossessor, upon being told by the officer he was going to the door to talk to defendant, asked if he could go too and talk to defendant because he wanted to find out about his car. The repossessor knocked first; defendant appeared at the window to the officer's left; defendant asked, "What do you guys want?" and there followed a conversation between defendant and the repossessor after which defendant said, "Go away. I don't have any car." Meanwhile Officer Celmer saw defendant point a gun at him, thus he then identified himself, displaying his badge and I.D., saying, "I am a police officer, open the door; I want to talk to you"; defendant, still pointing the gun at the officer said, "You are going to have to kick it down," then moved away from the window and ran; Officer Celmer heard running to the back of the house, and kicked the front door down; as he did so he heard the toilet start to flush and found defendant in the bathroom next to the toilet with the revolver still pointed at him. He took the gun (which was loaded) away from defendant and arrested him for assault with a gun. Asked why he kicked the door in, the officer testified that defendant continued to point the gun at him after he identified himself as a police officer and he knew defendant was an ex-convict; he also had information defendant was dealing in narcotics and had a large quantity inside and outside the house and had just seen him go outside and remove a paper bag he had buried. A search of defendant's person revealed heroin and hashish and in a closet was found a sawed-off double-barreled shotgun; neither the narcotics nor the gun was admitted in evidence. In the back yard and from under soft dirt, Officer Burke removed a brown paper bag containing four plastic bags of marijuana, the only exhibit in evidence (Exh. 4).

Defendant neither testified nor presented a defense. His only contentions on appeal relate to the authority of the police officers to arrest him in county territory.

Appellant's first claim that the arresting officers acted outside their jurisdiction, thus their entry on the premises, his arrest and the search and seizure of marijuana were unlawful, is based on the asserted theory that since Officer Celmer was under the "impression" that he arrested defendant in the City of Compton, the testimony of Deputy Rudolph that he gave permission to Officer Burke to work in county territory was untrue. Primarily this is a factual argument. It is undisputed, and defendant conceded in the court below, that while part of Butler Street is in the City of Compton, defendant's residence thereon is actually located in county territory and the arrest was made in the County of Los Angeles. Nothing in the record demonstrates that Officer Celmer was under the "impression" that he arrested defendant in the City of Compton; his sole reference to "Compton" related to what his informants had told him, i.e., that "defendant was deal-

ing heroin and marijuana from his residence on Butler Street in Compton" and that defendant lived "at 15811 Butler Street in Compton." Sergeant Burke testified that before going to the address he called first, the Compton Police Department and told Sergeant Schofield he was conducting a narcotic investigation on a dope peddler and asked him to accompany them but he said he was busy and could not; asked if they had his permission to work out there, Schofield said, "Certainly"; that then he called Firestone Sheriff's Station and gave the same information to Deputy Rudolph, asked him to accompany them to Butler Street but Rudolph said he had to be in court, and then asked the deputy if they had his permission to work in the county and the deputy answered, "Yes." Deputy Rudolph testified that Sergeant Burke called him and said he had just called Sergeant Schofield and found out the address was in the county not in the City of Compton; that 15811 Butler is in county territory and that he gave Sergeant Burke permission to conduct a narcotic investigation at that address. From the foregoing the inference is reasonable that when Officers Celmer and Burke went to the premises and Celmer arrested defendant at his residence he knew the same to be located not in the City of Compton but in the County of Los Angeles. ■ Finally, the conviction of defendant carries the implied finding of the trial judge that Officer Celmer knew the residence was in county territory and that he had permission to work therein; this finding is here conclusive. (*People* v. *Lara*, 67 Cal.2d 365, 392 [62 Cal. Rptr. 586, 432 P.2d 202].)

Section 817, Penal Code,[2] in effect at the time of arrest provided that "The authority of a peace officer extends to any place in the state . . . (b) if he has the prior consent of . . . the sheriff or person authorized by him to give such consent if the place is within the county." Eugene D. Rudolph is a deputy sheriff and narcotic investigator assigned to Headquarters Detective Bureau, Narcotics, Firestone Substation; it is undisputed that before the officers went to defendant's home Deputy Rudolph gave them permission or consent to conduct a narcotics investigation in county territory. Appellant claims there is no testimony that Deputy Rudolph was "authorized" by the sheriff to give consent and "it would seem extremely unlikely . . . that a mere deputy would have such authority," thus under section 817 since Deputy Rudolph was neither "the Sheriff" nor a "person authorized by him to give such consent," the police officers were not acting as peace officers and could not legally arrest him in county territory. Moreover, he submits without argument or citation of authority that section 817, Penal Code, a specific statute, limits the general provisions in the Government Code. In support of his last assertion appellant has pointed to nothing

---

[2]Section 817, Penal Code, was subsequently repealed and replaced by section 830 et seq., Penal Code, effective November 13, 1968.

that would suggest that Rudolph's powers as a deputy sheriff in any way had been limited to a scope more restrictive than that provided by the general laws.

The sheriff is designated in the general statutes (§ 24000, Gov. Code) as a county officer and "may appoint as many deputies as are necessary for the prompt and faithful discharge of the duties of his office." (§ 24101, Gov. Code.) ■ As to the extent of the power exercisable by a deputy sheriff, both the general statutes and decisional law establish that he possesses all of the powers and may perform all of the duties attached by law to the office of sheriff. Section 7, Government Code, provides: "Whenever a power is granted to, or a duty is imposed upon, a public officer, the power may be exercised or the duty may be performed by a deputy of the officer or by a person authorized, pursuant to law, by the officer, unless this code expressly provides otherwise"; and thereafter, section 1194, "When not otherwise provided for, each deputy possesses the powers and may perform the duties attached by law to the office of his principal." Likewise our courts have held "a deputy sheriff possesses all the powers and may perform all the duties attached by law to his principal's office. (*People* v. *Otto,* 77 Cal. 45, 47 [18 P. 869]; *Shirran* v. *Dallas,* 21 Cal.App. 405, 414 et seq. [132 P. 454, 462]; Gov. Code, § 24100.)" (*People* v. *Gonzales,* 136 Cal.App.2d 437, 441-442 [288 P.2d 588].) Thus, in the absence of a county ordinance[3] regulating and further defining the scope of the duties of deputy sheriffs, the general laws of the state touching such matters should govern (*Martin* v. *De Shields,* 187 Cal. 340, 342 [203 P. 118]; *Anderson* v. *Lewis,* 29 Cal.App. 24, 28 [154 P. 287]) and deputies who are acting in the line of official duty and under color of office may exercise all powers possessed by the sheriff.

■ Factually, nothing in the record suggests that Deputy Rudolph was in any manner limited or restricted by the sheriff in the exercise of his powers or the performance of his duties as a deputy; and the evidence supports the conclusion that Deputy Rudolph had the same power as the sheriff to give consent to other officers to work in county territory and that he

---

[3]A Los Angeles County ordinance does regulate deputy sheriffs and while it authorizes the sheriff to restrict the scope of the activities of his deputies, the ordinance does not do so in and of itself. "No. 4099, section 31 POWERS AND DUTIES OF DEPUTY: provides, In all cases not otherwise provided for by these rules or by ordinance of the Board of Supervisors, each assistant officer and each deputy shall have the powers and may perform the duties attached to the office of his principal with the following limitations: That each deputy and each assistant officer is at all times subject to the direction and control of his principal, and further that the principal may limit the scope and power of any assistant officer or deputy under his jurisdiction to certain defined duties, in which event the assistant officer or deputy would be without power to perform any other duties."

exercised the same not as a "person authorized [by the sheriff] to give such consent" but as a deputy. That Deputy Rudolph has always exercised this power is borne out by evidence of a pattern established under an informal working arrangement between Deputy Rudolph and Sergeant Burke, a narcotic officer assigned to narcotic detail in that general area, whereby he frequently gave consent to Sergeant Burke to work in county territory. Deputy Rudolph testified Sergeant Burke "usually calls me and says he is conducting an investigation and asks if I want to go along, and if I can I will go along; if not, I will tell him I can't go, but if you are going to conduct the investigation, go ahead"; and that in the last year at the request of Sergeant Burke "maybe six, seven, eight times . . . he gave such permission."

Section 24100, Government Code, provides: "Whenever the official name of any principal officer is used in any law conferring power or imposing duties or liabilities, it includes deputies." ■ Moreover, in the light of the presumption that the Legislature is aware of the general laws it has enacted (*Maloy* v. *Municipal Court*, 266 Cal.App.2d 414, 418 [72 Cal. Rptr. 207]; *People* v. *Hillard*, 103 Cal.App. 698, 701 [284 P. 1070]), and the rule that legislative intent should be ascertained upon a consideration of all of the law relating to the same subject matter (*People* v. *Hallner*, 43 Cal.2d 715, 719 [277 P.2d 393]), it is our view that in using the term "Sheriff" in section 817, Penal Code, the Legislature intended to include therein deputy sheriffs as distinguished from a "person authorized by [the sheriff] to give such consent," and we so construe it. Thus in the discharge of his official duties, Deputy Rudolph in giving consent to the officers, in effect was acting as the sheriff. We perceive no conflict between section 817, Penal Code, and section 7, Government Code, for they contain almost identical language. In pertinent part section 817, Penal Code, read, "the Sheriff, or person authorized by him to give such consent," while section 7, Government Code, provides that the power given or duty imposed on a public officer may be performed by "a deputy of the officer or by a person authorized, pursuant to law, by the officer." It seems clear that section 817 was simply a reaffirmation of the power of the sheriff expressed in section 7 to authorize another person pursuant to law to perform the duties of his office.

Inasmuch as he is a deputy sheriff and was acting in the performance of his official duties, the question is not whether Eugene D. Rudolph was a "person authorized [by the sheriff] to give such consent," but whether his act was that of the sheriff himself. We conclude that in giving consent to the police officers to make their narcotic investigation in the county Deputy Rudolph did so under section 817 as "the Sheriff" of Los Angeles County.

The order denying the motion under section 1538.5, Penal Code, is not separately appealable but may only be reviewed on appeal from a judgment of conviction, thus the purported appeal from the order is dismissed. The judgment is affirmed.

Thompson, J., and Gustafson, J., concurred.