TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 94-709 |
| of | : | |
| | : | September 30, 1994 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| CLAYTON P. ROCHE | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE HONORABLE KELVIN H. BOOTY, JR., COUNTY COUNSEL, ALAMEDA COUNTY, has requested an opinion on the following questions:

1.    Does the authority of a commissioner or deputy commissioner of civil marriages to solemnize marriages extend throughout the state?

2.    Does the appointment of a deputy commissioner of civil marriages to solemnize marriages "in and for" a particular county limit the deputy's authority to such county when performing wedding ceremonies?

CONCLUSIONS

1.    The authority of a commissioner or deputy commissioner of civil marriages to solemnize marriages extends throughout the state.

2.    The appointment of a deputy commissioner of civil marriages to solemnize marriages "in and for" a particular county does not limit the deputy's authority to such county when performing wedding ceremonies.

.                                                                                              94-709

ANALYSIS

Section 400 of the Family Code[1] sets forth various persons who may solemnize marriages in California. It provides:

"Marriage may be solemnized by any of the following who is the age of 18 years or older:

"(a)  A priest, minister, or rabbi of any religious denomination.

"(b)  A judge or retired judge, commissioner of civil marriages or retired commissioner of civil marriages, commissioner or retired commissioner, or assistant commissioner of a court of record or justice court in this state.

"(c)  A judge or magistrate who has resigned from office.

"(d)  Any of the following judges or magistrates of the United States:

"(1)  A justice or retired justice of the United States Supreme Court.

"(2)  A judge or retired judge of a court of appeals, a district court, or a court created by an act of Congress the judges of which are entitled to hold office during good behavior.

"(3)  A judge or retired judge of a bankruptcy court or a tax court.

"(4)  A United States magistrate or retired magistrate."

The focus of this opinion is upon a "commissioner of civil marriages" (§ 400, subd. (b)).  With respect thereto, section 401 provides:

"(a)  For each county, the county clerk is designated as a commissioner of civil marriages.

"(b)  The commissioner of civil marriages may appoint deputy commissioners of civil marriages who may solemnize marriages under the direction of the commissioner of civil marriages and shall perform other duties directed by the commissioner."

Pursuant to the provisions of sections 400 and 401, each county clerk is, ex-officio, a commissioner of civil marriages and may appoint deputy commissioners of civil marriages.

---

[1]All references hereafter to the Family Code are by section number only.

1.	Geographical Limitation

The first question presented is whether a commissioner or deputy commissioner of civil marriages may perform wedding ceremonies anywhere within the state or are they limited to their particular counties.  We conclude that they are no longer restricted to their individual counties.  Since each county clerk is a county officer (Gov. Code, § 24000, subd. (c)) and ex-officio a commissioner of civil marriages "[f]or each county" (§ 401, subd. (a)), it has been suggested that such statutory language geographically limits the grant of authority to perform wedding ceremonies.

Initially we note that as to all other persons enumerated in section 400, the authority granted to solemnize marriages contains no geographical limitation.  In reading subdivision (b) of section 400 by itself, it would appear that the same result should obtain as to commissioners of civil marriages.  It is only when section 400 is read in conjunction with section 401 that an ambiguity arises.

In resolving this ambiguity, we are guided by several well established principles of statutory interpretation.  Our "objective is to ascertain and effectuate the underlying legislative intent." (*Moore* v. *California State Board of Accountancy* (1992) 2 Cal.4th 999, 1012.)  "`To discern legislative intent, we must examine the legislative history and statutory context of the act under scrutiny.'" (*Long Beach Police Officers Assn.* v. *City of Long Beach* (1988) 46 Cal.3d 736, 743; see *Rourke* v. *Troy* (1993) 17 Cal.App.4th 880, 883.)  "[R]eports of legislative committees and commissions are part of a statute's legislative history and may be considered when the meaning of a statute is uncertain." (*Hutnick* v. *United States Fidelity & Guaranty Company* (1988) 47 Cal.3d 456, 465, fn. 7.)  "[L]egislative staff analyses of a measure may be used to discover legislative intent where . . . the analysis is in accord with a reasonable interpretation of the enactment." (*American Tobacco Co.* v. *Superior Court* (1989) 208 Cal.App.3d 480, 488.)  "The Legislative Counsel's Digest is a proper resource to determine the intent of the Legislature." (*Victoria Groves Five* v. *Chaffey Joint Union High School District* (1990) 225 Cal.App.3d 1548, 1555; see *Crowl* v. *Commission On Professional Competence* (1990) 225 Cal.App.3d 334, 347.)  "Reports and interpretive opinions of the Law Revision Commission are entitled to great weight." (*Schmidt* v. *Southern California Rapid Transit District* (1993) 14 Cal.App.4th 23, 30, fn. 10.)  Finally, "[w]hen the Legislature deletes an express provision of a statute, it is presumed that it intended to effect a substantial change in the law." (*Royal Company Auctioneers, Inc.* v. *Coast Printing Equipment Company* (1987) 193 Cal.App.3d 868, 873; see *People* v. *Dillon* (1983) 34 Cal.3d 441, 467.)

In 1992 the Legislature repealed various statutes relating to family law and placed them in a new Family Code (Stats. 1992, ch. 162), operative January 1, 1994.  Section 401 was previously Civil Code section 4205.1.  As explained by the California Law Revision Commission:  "Section 401 continues former Civil Code Section 4205.1 without substantive change." (23 Cal. Law Revision Com. Rep. 1 (1993).)  Prior to its repeal, Civil Code section 4205.1 provided:

"In any county the county clerk is designated as a commissioner of civil marriages.  The commissioner of civil marriages may appoint deputy commissioners of

.	94-709

civil marriages who may solemnize marriages under the direction of the commissioner of civil marriages and shall perform such other duties as the commissioner may direct."

As can be seen, the only difference in wording between the predecessor statute and section 401 is that "In any county" was replaced by "For each county." No basis has been suggested for concluding that such change in language was substantive.

We believe that the key legislative act resolving our question was the amendment of Civil Code section 4205.1 in 1984. (Stats. 1984, ch. 250, § 2.) From 1982 to 1984, the statute provided:

"In any county, the board of supervisors may designate the county clerk as a commissioner of civil marriages. The commissioner of civil marriages may appoint deputy commissioners of civil marriages who may solemnize marriages in the county under the direction of the commissioner of civil marriages and shall perform such other duties as the commissioner may direct. *The commissioner of civil marriages and deputy commissioners shall solemnize marriages only within their county and only during regular hours established by the board.*

"This section shall not be operative at any time except during such period or periods as the board of supervisors may find by resolution that conditions in the county are such that the convenience of the public requires the availability of commissioners of civil marriages for the solemnization of marriages by civil ceremony. The board of supervisors which has made such a finding may, by resolution, at any time rescind or repeal such finding and this section shall no longer be operative in that county until the board again makes such a finding." (Stats. 1982, ch. 1543, § 1; italics added.)

Prior to 1984, therefore, the authority of a commissioner or deputy commissioner of civil marriages to solemnize marriages was geographically limited to the county where the officer was appointed.

The Legislature's intent to repeal the geographical limitation previously placed upon commissioners and deputy commissioners was discussed numerous times in the legislative history of the 1984 amendment. The report of the Assembly Committee on Judiciary dated March 19, 1984, stated that the proposed legislation "would . . . remove limitations as to the time and place that a commissioner or deputy commissioner of marriages is authorized to perform marriages . . . ." The background information prepared by the staff of the Senate Committee on Judiciary explained that the legislation was proposed by the County Clerks Association in the belief that the "duty to perform a civil marriage should be the same for a Civil Marriage Commissioner as for a judge, court commissioner or retired judge." In a letter to Governor Deukmejian dated June 12, 1984, the author of the legislation, Assemblyman Lloyd Connelly, stated that the bill "[p]ermits county clerks to be commissioners of civil marriages by virtue of their holding office and would give them the same status as that of judges and court commissioners insofar as performing marriages." Finally, the Legislative Counsel's Digest summarized the purposes of the legislation as including the removal of "limitations as to the time and place that a commissioner or deputy commissioner of civil marriages is authorized to perform marriages . . . ."

Based upon the legislative history of section 401 and its predecessor statutes, it is evident that the Legislature has now granted each commissioner and deputy commissioner of civil marriages the authority to perform marriage ceremonies throughout the state. Beginning in 1984, the express limitation upon officiating at ceremonies only within a particular county was repealed. Nothing has occurred since 1984 that would demonstrate a change of legislative intent.

We thus view the phrase "for each county" contained in section 401 as something other than a geographical limitation upon where a commissioner or deputy commissioner of civil marriages may solemnize marriages. Just as a superior court judge, for example, is a judge of a superior court for a particular county, so too each commissioner and deputy commissioner of civil marriages is an officer "for" a particular county. Judges and court commissioners are not restricted to their counties when officiating at wedding ceremonies; neither are commissioners and deputy commissioners of civil marriages.

We conclude that the authority of a commissioner or deputy commissioner of civil marriages to solemnize marriages extends throughout the state.

2.      Appointment of Deputies

The second question presented concerns the appointment of a deputy commissioner of civil marriages. If the appointment is "in and for" a particular county, would such words of appointment limit the deputy's authority to such county when performing wedding ceremonies? We conclude that it would not.

First, as demonstrated in the analysis of the first question, the Legislature intended to grant statewide authority to deputy commissioners to perform marriage ceremonies. From the legislative histories of sections 400 and 401, it is apparent that both commissioners and deputy commissioners are not limited to their individual counties when performing such duties. Just as "[f]or each county" in section 401 does not constitute a geographical limitation, an appointment "in and for" a particular county would not constitute such a limitation but rather would merely reflect the statutory language.

Moreover, in 63 Ops.Cal.Atty.Gen. 710, 712 (1980), we summarized the general powers and duties of a deputy as follows:

"With respect to the powers and duties of deputies generally, section 7 of the Government Code provides:

"`Whenever a power is granted to, or a duty is imposed upon, a public officer, the power may be exercised or the duty may be performed by a deputy of the officer or by a person authorized, pursuant to law, by the officer, *unless this code expressly provides otherwise.*'   (Emphasis added.)

"Additionally, section 1194 of the Government Code provides:

"`*When not otherwise provided for,* each deputy possesses the powers and may perform the duties attached by law to the office of his principal.'   (Emphasis added.)

"As stated in *Sarter* v. *Siskiyou County* (1919) 42 Cal.App.530, 536:

"`. . . In brief, *a deputy* under a public officer *and the officer* or person holding the office, are, in contemplation of law and in an official sense, *one and the same person . . . .*'   (Emphasis added.)

"(See also, generally, with respect to the relationship of the deputy to his principal: *People* v. *Hulbert* (1977) 75 Cal.App.3d 404; *People* v. *Woods* (1970) 7 Cal.App.3d 382, 387; *Wilbur* v. *Office of City Clerk* (1956) 143 Cal.App.2d 636, 643-644; *People* v. *Purcell* (1937) 22 Cal.App.2d 126, 133; *Foucht* v. *Hirni* (1922) 57 Cal.App. 685.)

"Accordingly, . . . a deputy possesses all the powers and may perform all the duties of his principal, and in contemplation of law is `one and the same person' as his principal . . . ."[2]

We conclude in answer to the second question that the appointment of a deputy commissioner of civil marriages to solemnize marriages "in and for" a particular county does not act as a geographical limitation upon the deputy's authority to perform wedding ceremonies.

\* \* \* \* \*

---

[2]The functions of the principal that a deputy may perform are subject to executive "direction" as well as legislative control.  (*People* v. *Woods* (1970) 7 Cal.App.3d 382, 387; *People* v. *Hagan* (1954) 128 Cal.App.2d 491, 493-494; 70 Ops.Cal.Atty.Gen. 250, 253, fn. 6 (1987); 62 Ops.Cal.Atty.Gen. 479, 482, 486, 491 (1979); 56 Ops.Cal.Atty.Gen. 399, 401-402 (1973); 52 Ops.Cal.Atty.Gen. 75, 77 (1969); 31 Ops.Cal.Atty.Gen. 121, 125-126 (1958); 24 Ops.Cal.Atty.Gen. 56, 59 (1955).)  In this regard, subdivision (b) of section 401 provides that "deputy commissioners of civil marriages . . . may solemnize marriages under the direction of the commissioner of civil marriages . . . ."  (See *People* v. *Towery* (1985) 174 Cal.App.3d 1114, 1126; 68 Ops.Cal.Atty.Gen. 189, 192-193 (1985); 55 Ops.Cal.Atty.Gen. 151, 154 (1972).)  However, here we are dealing only with the terms of an appointment unintended as a geographical limitation; no attempt is made to circumscribe the statutory powers of the deputy.